Filing # 247165813 E-Filed 04/29/2026 02:42:28 PM

IN THE COUNTY COURT OF THE TENTH JUDICIAL CIRCUIT
IN AND FOR POLK COUNTY, FLORIDA
CIVIL DIVISION

RUBEN GALINDO VEGA,

      *Plaintiff,*

v.

TRANSUNION, LLC, EQUIFAX
INFORMATION SERVICES, LLC,
EXPERIAN INFORMATION
SOLUTIONS, INC., SYNCHRONY
FINANCIAL doing business as
SYNCHRONY BANK.,

      *Defendant.*

Case No.: _____

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiff, Ruben Galindo Vega ("Mr. Galindo"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, TransUnion, LLC ("TransUnion"), Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), Synchrony Financial d/b/a Synchrony Bank, (together, the "Defendants"), and stating as follows:

### PRELIMINARY STATEMENT

1. This is an action brought by Mr. Galindo for damages exceeding $8,000 but less than $50,000, against the Defendants for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

### JURISDICTION AND VENUE

2. Jurisdiction arises under the FCRA, 15 U.S.C. § 1681p and § 34.01, Fla. Stat.

3. The Defendants are subject to the provisions of the FCRA and to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat.

2026CC-004820-A000-BA      **Received in Polk 04/29/2026 04:47 PM**

4.      Venue is proper in Polk County, because the acts complained of were committed and/or caused by the Defendants within Polk County.

## PARTIES

5.      Plaintiff, **Mr. Galindo** is a natural person residing in the city of Lakeland, Polk County, Florida.

6.   Defendant, **TransUnion**, is a Delaware limited liability company with a principal business address of 555 West Adams Street, Chicago, IL 60661.

7.   TransUnion is registered to conduct business as a foreign corporation in the State of Florida and its Florida registered agent is **Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301**.

8.      Defendant, **Equifax** is a Georgia limited liability company with a principal business address of 1550 Peachtree Street, NW, Atlanta, GA 30309.

9.      Equifax is registered to conduct business as a foreign corporation in the State of Florida, where its Registered Agent is **Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301**.

10.      Defendant, **Experian** is an Ohio corporation with a principal business address of 475 Anton Boulevard, Costa Mesa, CA 92626.

11.      Experian is registered to conduct business as a foreign corporation in the State of Florida, where its Registered Agent is CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

12.      Defendants, TransUnion, Equifax, and Experian are *Consumer Reporting Agencies* ("CRAs") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that they, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the

purpose of furnishing consumer reports to third parties, and use various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

13.    Defendant, **Synchrony** is a Delaware corporation with a principal business address of 777 Long Ridge Road, Stamford, Connecticut 06902.

14.    Synchrony's registered agent is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

## FACTUAL ALLEGATIONS

15.    On or around August 23, 2022, Mr. Galindo needed to finance a dental procedure performed by Jeffry D. Barnes, D.M.D. **SEE PLAINTIFF'S EXHIBIT A**.

16.    Mr. Galindo applied for a Care Credit account issued through Synchrony to cover the costs of the dental procedure.

17.    On or about August 19, 2022, Synchrony made a $3,528 loan (the "Loan") to Mr. Galindo which he used to pay for the dental services. *Id.*

18.    Care Credit accounts can be used only to make charges at certain medical providers, including dentists and dermatologists; it is not possible to charge amounts from non-medical providers to a Care Credit account.

19.    Synchrony reported the account to TransUnion, Experian, and Equifax as a non-medical debt, despite the fact that the entire account stemmed from a medical procedure. **SEE PLAINTIFF'S EXHIBITS B, C, & D.**

20.    Specifically, Synchrony reported the account as a "Charge Card." *Id.*

21.    Pursuant to the FCRA, the term "medical information" means "information or data, whether oral or recorded, in any form or medium, created by or derived from a health care provider

or the consumer, that relates to … the provision of health care to an individual." *See* 15 USC 1681a(i)(1)(B).

22.    As the Account related to charges concerning the provision of health care to Mr. Galindo, the account was "medical information" as defined by the FCRA.

23.    While the account was used exclusively for medical services, Equifax, Experian, and TransUnion reported the "Type of Loan" as a "Charge Account" and the "Type of Account" as "Revolving."

24.    By labeling the debt as a standard bank-issued "Charge Account," Equifax, Experian, and TransUnion failed to accurately represent the nature of the transaction as "medical information" under 15 U.S.C. § 1681a(i)(1)(B).

25.    TransUnion, Experian, and Equifax, require furnishers of data like Synchrony to report a "creditor classification code" ("CCC") which indicates the nature of the transaction.

26.    A total of 15 different CCCs exist in the Metro 2® reporting language, which is a *lingua franca* used by the major nationwide CRAs to create uniform reporting standards.

27.    A CCC of "02" means "medical/health care," and a CCC of "08" means "banking."

28.    Accounts reported with the "02" CCC are redacted and simply state "MEDICAL PAYMENT DATA" in reports that Experian furnishes to third parties.

29.    If a consumer applies for a mortgage guaranteed through the Federal Housing Administration ("FHA") or any other government agent, accounts reported with the "02" CCC are excluded from the consumer's debt-to-income ratios.

30.    Almost all commercially used credit scores, including most versions of FICO® as well as Vantage® credit scores, weigh adverse information reported with an "02" CCC

significantly less severely against the consumer than adverse information reported with any other CCC.

31.    Some credit scores ignore medical debt altogether.

32.    As of July 1, 2022, the major CRAs also delete paid derogatory tradelines from a consumer's credit history if the CCC is reported as "02" to ensure that consumers are not unfairly harmed by paid medical debts which were previously derogatory.

33.    On December 1, 2025, Mr. Galindo issued initial disputes of Synchrony's tradeline to Equifax and Experian, stating the reported data was not accurate and that, amongst other issues, the account should be reported as a medical debt if reported at all. **SEE PLAINTIFF'S EXHIBITS E & F.**

34.    March 23, 2026, Mr. Galindo issued a second dispute of Synchrony's tradeline to Equifax and Experian. **SEE PLAINTIFF'S EXHIBITS G & H.**

35.    On March 23, 2026, Mr. Galindo also issued an initial dispute of Synchrony's tradeline to TransUnion. **SEE PLAINTIFF'S EXHIBITS I.**

36.    TransUnion, Equifax, and Experian made no human-lead investigations of these disputes at all.

37.    Instead, TransUnion, Equifax, and Experian's automated systems sent Synchrony an *Automated Consumer Dispute Verification* ("**ACDV**") request through a system known as e-OSCAR and asked Synchrony to make a reasonable investigation into the dispute pursuant to the FCRA.

38.    When responding to an ACDV through e-OSCAR, the person sending the response must electronically sign to confirm as follows:

[b]y submitting this ACDV, you certify that you have verified the accuracy of the data in compliance with all legal requirements, and your computer and/or manual records will be adjusted to reflect the changes noted.

39.     Synchrony responded to the ACDV request, confirming its tradeline was correct and required no modification or deletion.

40.     Synchrony had no basis to conclude the Debt was not medical in nature since its business records clearly showed the Debt consisted of *only* medical debt.

41.     If a furnisher of data to a CRA, like Synchrony, confirms disputed information as accurate, "the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Hinkle v. Midland Credit Management, Inc.* (11th Cir.) 827 F.3d 1295 (2016).

42.     The standard for judging the reasonableness of procedures "is what a reasonably prudent person would do under the circumstances." *Stewart v. Credit Bureau, Inc.,* 734 F.2d 47, 51 (D.C. Cir. 1984).

43.     Synchrony is a large bank which receives thousands of ACDVs each month.

44.     To minimize costs, Synchrony instructs its employees or contractors responding to ACDVs to quickly compare the information contained in the requesting CRAs file against Synchrony's own internal records.

45.     On information and belief, Synchrony does not authorize its employees/contractors to make any actual investigation at all, beyond a *de minimis* comparison of CRA records to Synchrony's own records.

46.     For this reason, a consumer who disputes something specific about the data being reported – such as an incorrect classification of a medical debt as a non-medical debt – will have his information confirmed as "accurate" simply because Synchrony's own flawed records show as

much, and, moreover, the employees/contractors answering the disputes are not trained to investigate disputes of this nature nor are they empowered to make such investigations.

47. No objective, reasonable investigation was made; any reasonable investigation would have determined that the Debt should not have been reported as a charge account or charge card.

48. This is especially true considering Synchrony designed and implemented the Care Credit program as a "dedicated health and wellness credit card." Synchrony is well aware that this product is "designed exclusively for healthcare services" and is accepted by dentists, dermatologists, ophthalmologists, and other healthcare specialists and providers. *See* carecredit.com.

49. Additionally, after notice of dispute, Synchrony was required to indicate the tradeline was disputed by the consumer, which it did not.

50. Metro 2 contains 10 different "compliance condition codes" for data furnishers to notate accounts as disputed, previously disputed, and so on.

51. When Synchrony verified its information as accurate to the CRAs, it did not update its reporting to include any compliance condition codes to indicate that Mr. Galindo disputed the Debt.

52. Synchrony should have reported the Debt with an indication of "account information disputed by consumer," which in Metro 2 is a compliance condition code of "XB."

53. Reporting a debt as "disputed" is significant because many commercially used credit scoring algorithms disregard (or weigh less severely) a collection account reported as currently in dispute from their score computations.

54. Synchrony's failure to disclose that the Debt was currently being disputed materially damaged Mr. Galindo's credit scores.

55. Further, this failure to update reporting to indicate disputed information is disputed in and of itself violates the FCRA. *See Saunders v. Branch Banking and Trust Company of Virginia* 526 F.3d 142 (4th Cir. 2008); *Seamans v. Temple University*, 744 F.3d 853, 864 (3d Cir. 2014), (private cause of action arises under § 1681s-2(b) when, having received notice of a consumer's potentially meritorious dispute, furnisher subsequently fails to report that claim is disputed).

56. Synchrony's failure to report the Debt as disputed adversely impacted Mr. Galindo's credit scores since the vast majority of consumer credit scores, including FICO, the most commonly used credit score in the country, exclude revolving credit accounts reported as "disputed."

57. The failure to properly report a disputed debt *as disputed* creates a concrete injury-in-fact because the failure to disclose this information affects credit scores, meaning Mr. Galindo suffered "a real risk of financial harm caused by an inaccurate credit rating." *Evans v. Portfolio Recovery Associates*, 889 F. 3d 337, 345 (7th Cir 2018).

58. Synchrony's failures were willful and intentional since they were the result of intentional policies put in place to minimize investigation costs, even though the accuracy of the investigations would be impaired.

59. As of the date of this filing, Synchrony continues to report the Debt to the CRAs a non-medical debt and an undisputed Debt.

60. The misclassification is a material inaccuracy because accounts reported as "Charge Accounts" or "Revolving" impact a consumer's Credit Limit and High Credit metrics, which are weighed more heavily in scoring algorithms than debt classified as "medical."

### Experian, Equifax, and TransUnion Make Unreasonable Investigation

61.    Experian, Equifax, and TransUnion have furnished reports about Mr. Galindo to third parties – creditors, or potential creditors, which included the Debt improperly reported as a non-medical debt and lacking a notation indicating the Debt was disputed.

62.    CRAs are required to conduct their own investigations into a dispute from a consumer. *See* 15 U.S.C. § 1681i(a)(1)(A).

63.    On information and belief, rather than conduct its own independent reinvestigation, Experian, Equifax, and TransUnion, in response to the disputes received from Mr. Galindo, merely relied on the dispute responses from Synchrony, blindly accepting the results and updating their reporting accordingly.

64.    Experian, Equifax, and TransUnion determined that the electronic verification of the tradeline by Synchrony – something requiring only a few clicks of a computer mouse – was somehow more persuasive evidence than anything proffered by Mr. Galindo, even though Mr. Galindo's disputes and version of events were far more probable than that of Synchrony's. Moreover, even a cursory review of the CareCredit website quickly reveals the product is a medical-only charge card.

65.    At the absolute minimum, Experian, Equifax, and TransUnion could not have believed that the Debt was *not* disputed by Mr. Galindo, and Synchrony's failure to report it as disputed should have been a red flag which indicated that Synchrony's reinvestigations were not reliable.

66.    Upon receipt of the ACDV responses, Experian, Equifax, and TransUnion utilized an automated system which made rudimentary checks of tradeline data between what Synchrony

reported, and the data contained in Experian's own file on Mr. Galindo, *e.g.*, his name, address, date of birth, and Social Security number.

67. Such automated processes will not do anything to correct medical payment data reported as non-medical.

68. For at least the last 40 years, courts in this district have recognized that a CRA cannot rely solely upon its data furnisher when the consumer provides proof questioning the reliability and accuracy of the data furnisher's representations.

69. The CRA must make some independent investigation of its own. *See Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972 (M.D.Fla.1985) ("Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [data furnisher].").

70. Experian, Equifax, and TransUnion were obligated to do more than merely send ACDVs to Synchrony to investigate Mr. Galindo's disputes because Mr. Galindo had specifically highlighted the issue in his disputes.

71. Mr. Galindo suffered from lost time and stress from having to seek counsel to rectify the wrongly reported information, after attempting to resolve the problem himself through multiple disputes.

72. Mr. Galindo suffered significant impairment to his credit and scores and was either denied credit or offered credit on less-favorable terms.

73. Mr. Galindo has hired the undersigned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

## COUNT I
### SYNCHRONY'S WILLFUL VIOLATIONS OF THE FCRA, U.S.C. § 1681s-2(b)

74. Mr. Galindo adopts and incorporates paragraphs 1 – 73 as if fully stated herein.

75. Synchrony violated **15 U.S.C. § 1681s-2(b)** when it failed, on multiple occasions, to conduct a reasonable investigation after notice of dispute from a CRA, as any reasonable investigation would have concluded the Debt – which was entirely medical in nature – should be reported with a CCC of "02" and not as a "Charge Account" or "Revolving," as such, Synchrony's reported information was not accurate and complete without modification.

76. Synchrony violated **15 U.S.C. § 1681s-2(b)** when it failed to update, modify, or correct its reports after receiving notices of dispute from a CRA, Experian. Specifically, Synchrony failed to modify its reporting to indicate the Synchrony tradeline was disputed, when it was.

77. The information Synchrony reported and verified was clearly inaccurate, and indeed no reasonable investigations were actually conducted by Synchrony.

78. Synchrony's actions were either willful and intentional or, alternatively, it acted with reckless disregard for its duties under the FCRA to make reasonable investigations.

79. It is reasonably foreseeable that Synchrony's actions and policies would cause Mr. Galindo harm.

80. Synchrony's conduct caused Mr. Galindo to suffer damages to his credit report and scores, as well as emotional distress in having to deal with an account being reported which he disputed to no avail.

81. Accordingly, Synchrony is liable, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Galindo's actual damages or statutory damages of $1,000 per violation, plus punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Mr. Galindo respectfully requests this Honorable Court to enter judgment in his favor, and against Synchrony, for:

a. The greater of Mr. Galindo's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3); and,

d. Such other relief that this Court deems just and proper.

## COUNT II
## SYNCHRONY'S NEGLIGENT VIOLATIONS OF THE FCRA,
## 15 U.S.C. § 1681s-2(b)
### Pled in the Alternative to Count I

82. Mr. Galindo adopts and incorporates paragraphs 1 –73 as if fully stated herein and pled strictly in the alternative to Count I.

83. Synchrony violated **15 U.S.C. § 1681s-2(b)** when it failed, on multiple occasions, to conduct a reasonable investigation after notice of dispute from a CRA, as any reasonable investigation would have concluded the Debt – which was entirely medical in nature – should be reported with a CCC of "02" and not as a "Charge Account" or "Revolving," as such, Synchrony's reported information was not accurate and complete without modification.

84. Synchrony violated **15 U.S.C. § 1681s-2(b)** when it failed to update, modify, or correct its reports after receiving notices of dispute from a CRA, Experian. Specifically, Synchrony failed to modify its reporting to indicate the Synchrony tradeline was disputed, when it was.

85. Synchrony received a notice of a dispute multiple times from Experian.

86. Synchrony owed Mr. Galindo a legal duty to conduct reasonable investigations upon receiving such notice.

87. Synchrony breached this duty when it failed, multiple times, to conduct a reasonable investigation.

88.    It is reasonably foreseeable that Synchrony's actions and policies would cause Mr. Galindo harm.

89.    Synchrony's conduct caused Mr. Galindo to suffer damages to his credit report and scores, as well as emotional distress in having to deal with an account being reported which he disputed to no avail.

90.    Synchrony acted negligently, and is liable, pursuant to 15 U.S.C. § 1681o, for Mr. Galindo's actual damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Mr. Galindo respectfully requests this Honorable Court to enter judgment in his favor, and against Synchrony, for:

a.    Mr. Galindo's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

## COUNT III
## WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681i(a)(1)(A)
## Experian, Equifax, and TransUnion Only

91.    Mr. Galindo adopts and incorporates paragraphs 1 –73 as if fully stated herein.

92.    Experian, Equifax, and TransUnion violated **15 U.S.C. § 1681i(a)(1)(A)** when they each failed, on multiple occasions, to conduct a reasonable reinvestigation into disputes from Mr. Galindo regarding the Debt, since any reasonable investigation would have concluded that the Debt was medical in nature, or at the very least, that the Debt was disputed.

93.    Experian, Equifax, and TransUnion's conduct was a result of their regular policies and procedures, which outsource investigations to its data furnishers.

94.    Experian, Equifax, and TransUnion's conduct was willful and intentional, or, alternately, Experian, Equifax, and TransUnion acted with reckless disregard for their duties under the FCRA to investigate consumer disputes.

95.    Experian, Equifax, and TransUnion are thus liable, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Galindo's actual damages and statutory damages of up to $1,000 for *each occurrence*, plus punitive damages, reasonable attorneys' fees and costs.

**WHEREFORE,** Mr. Galindo respectfully requests this Honorable Court to enter judgment against Experian, Equifax, and TransUnion for:

a.    The greater of Mr. Galindo's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

## COUNT IV
## NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681i(a)(1)(A)
## Experian, Equifax, and TransUnion Only
### Pled in the Alternative to Count III

96.    Mr. Galindo adopts and incorporates paragraphs 1 –73 as if fully stated herein and strictly pled in the alternative to Count III.

97.    Experian, Equifax, and TransUnion violated **15 U.S.C. § 1681i(a)(1)(A)** when they each failed, on multiple occasions, to conduct a reasonable reinvestigation into disputes from Mr. Galindo regarding the Debt, since any reasonable investigation would have concluded the Debt was medical in nature, or at the very least, that the Debt was disputed.

98.     Experian, Equifax, and TransUnion owed Mr. Galindo a legal duty to conduct reasonable investigations upon receiving notice that Mr. Galindo disputed the Synchrony tradeline, on multiple occasions.

99.     Experian, Equifax, and TransUnion breached this duty when they failed, multiple times, to conduct a reasonable investigation.

100.     Experian, Equifax, and TransUnion's conduct was negligent, and Experian, Equifax, and TransUnion are liable, pursuant to 15 U.S.C. § 1681o, for Mr. Galindo's actual damages, reasonable attorneys' fees and costs.

**WHEREFORE,** Mr. Galindo respectfully requests this Honorable Court to enter judgment against Experian for:

   a.   Mr. Galindo's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

   b.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

   c.   Such other relief that this Court deems just and proper.

<u>**JURY TRIAL DEMANDED**</u>

Mr. Galindo hereby demands a jury trial on all issues so triable.

Respectfully submitted on April 29, 2026, by:

**SERAPH LEGAL, P.A.**

/s/ James Hubbard
James Hubbard
FL BAR #121405
Seraph Legal, P.A.
3505 East Frontage Rd., STE 145
Tampa, FL 33604
Tel: 813-567-1230
JHubbard@SeraphLegal.Com

**ATTACHED EXHIBITS**

A.    Plaintiff's CareCredit Payment Statement, November 10, 2025
B.    Plaintiff's Equifax Consumer Disclosure, November 5, 2025 - Excerpt
C.    Plaintiff's Experian Consumer Disclosure, December 1, 2025 – Excerpt
D.    Plaintiff's TransUnion Consumer Disclosure, March 23, 2026 – Excerpt
E.    Plaintiff's Dispute of the Synchrony Tradeline to Equifax, December 1, 2025
F.    Plaintiff's Dispute of the Synchrony Tradeline to Experian, December 1, 2025
G.    Plaintiff's Second Dispute of the Synchrony Tradeline to Equifax, March 23, 2026
H.    Plaintiff's Second Dispute of the Synchrony Tradeline to Experian, March 23, 2026
I.    Plaintiff's Dispute of the Synchrony Tradeline to TransUnion, March 23, 2026

**2026CC-004820-A000-BA        Received in Polk 04/29/2026 04:47 PM**

# EXHIBIT A
# CARECREDIT PAYMENT STATEMENT

## Jeffry D. Barnes, DMD, PA

320 Avenue K SE
Suite 1
Winter Haven, FL 33880
(863)293-5099    (863)647-1515

November 10, 2025

Ruben Galindo



ID: ■

| | Account Aging | |
|---|---|---|
| Current | | $0.00 |
| 30 Days | | $0.00 |
| 60 Days | | $0.00 |
| 90 Days | | $0.00 |
| Contract | | $0.00 |
| Balance Due | | $0.00 |
| Estimated Insurance | | $0.00 |
| **Balance Due Now:** | | **$0.00** |



| Date | Patient | Provider | Transaction | Tth | Surface | Fee |
|---|---|---|---|---|---|---|
| 9/26/2022 | Ruben | Jeffry D Barnes | ■ | | | $0.00 |
| 9/7/2022 | Ruben | Jeffry D Barnes | ■ | | | $0.00 |
| 8/23/2022 | Ruben | Jeffry D Barnes | ■ | 5 | | $1,387.00 |
| | Ruben | Jeffry D Barnes | ■ | 6 | | $1,033.00 |
| | Ruben | Jeffry D Barnes | ■ | 7 | | $1,033.00 |
| | Ruben | Jeffry D Barnes | ■ | | | $75.00 |
| 8/2/2022 | Ruben | Jeffry D Barnes | ■ | | | $108.00 |
| 8/23/2022 | Ruben | | Acct Pmt - CareCredit for ($3,528.00) | | | |
| 8/2/2022 | Ruben | | Acct Pmt - Visa for ($108.00) | | | |

| | |
|---|---|
| SubTotal: | $3,636.00 |
| Tax: | $0.00 |
| Charge(s): | $3,636.00 |
| Payment(s): | $3,636.00 |
| Balance Due: | $0.00 |

# EXHIBIT B
## PLAINTIFF'S EQUIFAX CONSUMER DISCLOSURE, NOVEMBER 5, 2025 - EXCERPT

**RUBEN GALINDO VEGA**



**EQUIFAX**

Date: November 05, 2025

Confirmation #



### SYNCB/CARE CREDIT - Closed

PO Box 71757 Philadelphia PA 19176-1757  (866) 396-9254

Account Number:  Owner: **Individual Account**

Loan/Account Type: **Charge Account**  Status: **Pays As Agreed**

Date Reported: **12/25/2023**  Balance: **$0**

Credit Limit: **$3,070**  High Credit: **$3,528**

| | | | |
|---|---|---|---|
| Date Opened: **08/19/2022** | Date of 1st Delinquency: - | Term Frequency: **Monthly** | |
| Date of Last Activity: **08/13/2023** | Date Major Delinquency 1st Reported: | Months Reviewed: **16** | |
| Scheduled Payment Amount: | Amount Past Due: - | Deferred Payment Start Date: - | |
| Actual Payment Amount: - | Charge Off Amount: | Balloon Payment Amount: - | |
| Date of Last Payment: **08/13/2023** | Date Closed: **09/24/2023** | Balloon Payment Date: - | |
| Term Duration: | Activity Designator: **Paid and Closed** | Narrative Code(s): **158, 065, 229** | |

### Payment History

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2023 | | | | | | | | | | | | |
| 2022 | | | | | | | | | | | | |

### 24 Month History

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Last Payment Date | Past Due Amount | High Credit | Credit Limit | Narrative Codes |
|---|---------|--------------------------|------------------------|-------------------|-----------------|-------------|--------------|------------------|
| | $ | | | | | $ | $ | |

### Narrative Code

| Narrative Code | Narrative Code Description |
|----------------|---------------------------|
| 158 | Closed or paid Account/Zero balance |
| 065 | Account closed by credit grantor |
| 229 | Charge |
| 233 | Amount in high credit is usual/high credit limit |

# EXHIBIT C
## PLAINTIFF'S EXPERIAN CONSUMER DISCLOSURE, DECEMBER 1, 2025 - EXCERPT



**EXHIBIT D**
**PLAINTIFF'S TRANSUNION CONSUMER DISCLOSURE, MARCH 23, 2026 - EXCERPT**

## Your TransUnion Credit Report

**Found something inaccurate on your credit report?**

Visit transunion.com/dispute to start a dispute online.

If you are experiencing a financial hardship related to a public health emergency or your personal circumstances, you can add a consumer statement to your credit file to explain your situation by visiting us at www.transunion.com/credit-help ☑.

### 🧑 Personal Information

Your SSN has been masked for your protection

**Credit Report Date**

03/23/2026

**Social Security Number**

███████

**Date of Birth**

10/08/1980

**Name**

RUBEN G GALINDO

SYNCB/CARE CREDIT ████████

**Account Information**

| | |
|---|---|
| **Address** | PO BOX 71757 PHILADELPHIA, PA 19176 |
| **Phone** | (866) 396-8254 |
| **Date Opened** | 08/19/2022 |
| **Responsibility** | Individual Account |
| **Account Type** | Revolving Accoun |
| **Loan Type** | CHARGE ACCOUN |
| **Balance** | $ |
| **Date Updated** | 12/25/2023 |
| **Payment Received** | $0 |
| **Last Payment Made** | 08/13/2023 |
| **High Balance** | $3,528 |
| **Credit Limit** | $3,070 |
| **Pay Status** | Paid, Closed, was Paid as agreed |
| **Terms** | Paid Monthly |
| **Date Closed** | |

Chat Now

2026CC-004820-A000-BA        Received in Polk 04/29/2026 04:47 PM

## EXHIBIT E
## PLAINTIFF'S DISPUTE OF THE SYNCHRONY TRADELINE TO
## EQUIFAX, DECEMBER 1, 2025



**Credit Account - Closed Revolving**
**SYNCB/CARE CREDIT**

**Issue type**

**Issue**

**Dispute comments**

**Supporting documents**



**You have successfully submitted your dispute.**

**Item disputed**
**SYNCB/CARE CREDIT**

**Issue type**
Last reported account status and account information

**Issue**
The status, payment history, or payment rating on this account is not correct

**Confirmation #**
5335553906

2026CC-004820-A000-BA    **Received in Polk 04/29/2026 04:47 PM**

## EXHIBIT F
## PLAINTIFF'S DISPUTE OF THE SYNCHRONY TRADELINE TO EXPERIAN, DECEMBER 1, 2025

12/1/25, 12:53 PM                                                    Experian - Dispute Cart

### Review your request                                             Common questions

Congratulations! The below item(s) were submitted successfully! If this is your final request, we recommend that you print your Full Report or save it to another file before ending your session. When we complete the processing of your dispute(s), which may take up to 30 days (or up to 45 days for a dispute of information in a free annual credit report), we will send you the results.

More about dispute process ⟨?⟩    More about statements ⟨?⟩



| 1 Item(s) successfully submitted | | | |
|---|---|---|---|
| **Account name**<br>SYNCB/CARE CREDIT | **Account number**<br>601918387803.... | **Status**<br>Paid, Closed/Never late. | **Details**<br>Other reason |
| PO BOX 71757<br>PHILADELPHIA, PA 19176<br>8663968254<br><br>**Address identification number**<br>0951028669 | **Recent balance**<br>Not reported | **Date opened**<br>08/19/2022 | **Additional information**<br>*This is a medical use card only. This was used at Jeffry Barnes DMD in Winter Haven FL. Please call them to verify 863 293 5099* |

**Back to credit report**       **Notify companies**

2026CC-004820-A000-BA         **Received in Polk 04/29/2026 04:47 PM**

## EXHIBIT G
## PLAINTIFF'S SECOND DISPUTE OF THE SYNCHRONY TRADELINE
## TO EXPERIAN, MARCH 23, 2026

3/23/26, 12:51 PM                                    Experian – Personal Credit Report



**Personal Credit Report**

**/ · Confirmation**

Your document upload was successful. If your uploaded document is in support of and would not be sent to the appropriate data furnisher. Once we have received a response from the data furnisher (if applicable), you will be notified of the results. Documents uploaded on weekends or holidays will be considered received by Experian on the next business day.

**Exit >>**

**2026CC-004820-A000-BA**        **Received in Polk 04/29/2026 04:47 PM**

## EXHIBIT H
## PLAINTIFF'S SECOND DISPUTE OF THE SYNCHRONY TRADELINE
## TO EQUIFAX, MARCH 23, 2026



**Credit Account - Closed Revolving**
**SYNCB/CARE CREDIT**

**Issue type**

**Issue**

**Dispute comments**

**Supporting documents**

# EXHIBIT H
## PLAINTIFF'S SECOND DISPUTE OF THE SYNCHRONY TRADELINE
## TO EQUIFAX, MARCH 23, 2026

3/23/26  1:59 PM                                                  Dispute Center - myEquifax



You have successfully submitted your dispute.

**Item disputed**
SYNCB/CARE CREDIT
xxxxxxxxxxxxG124

**Issue type**
I am reporting inaccurate account status and account information

**Issue**
The status, payment history, or payment rating on this account is not correct

**Confirmation #**
EU32003T367

2026CC-004820-A000-BA          Received in Polk 04/29/2026 04:47 PM

## EXHIBIT I
## PLAINTIFF'S DISPUTE OF THE SYNCHRONY TRADELINE TO
## TRANSUNION, MARCH 23, 2026





2026CC-004820-A000-BA    **Received in Polk 04/29/2026 04:47 PM**